UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHN SHELBY,** *Plaintiff,* | § § § § § | |
| v. | § § | CIVIL ACTION: 4:24-cv-01128 |
| **AMGUARD INSURANCE COMPANY,** *Defendant,* | § § § § § § § | |

**PLAINTIFF JOHN SHELBY'S REPLY TO DEFENDANT'S VERIFIED
RESPONSE TO SHOW CAUSE ORDER**

TO THE HONORABLE JUDGE ESKRIDGE:

Plaintiff respectfully submits this Reply to Defendant's Verified Response to Show Cause to clarify the record and demonstrate that he substantially complied with the Court's December 17, 2024 Order requiring best efforts to complete the appraisal by June 17, 2025 [Dkt. 31]. The procedural history and supporting record show that Plaintiff acted diligently, in good faith, and within the bounds of the Court's directives.

**Plaintiff Complied With The Court's Best Efforts Standard**

The Court's December 17 Order directed both parties to use best efforts to complete appraisal by June 17, 2025, a standard rooted in reasonable diligence, not to an inflexible deadline. Plaintiff submits that he met this standard through a series of prompt and constructive steps following unforeseen developments.

On March 18, 2025, Plaintiff's originally designated appraiser, Angela Faulkner, withdrew from her role [Dkt. 35-2]. Within six days, Plaintiff designated Richard Gadrow as her

replacement and provided notice to Defendant [Dkt. 35-4]. Mr. Gadrow then undertook a detailed evaluation that included meteorological research, forensic damage analysis, and the development of technical documentation to support Plaintiff's position [Dkt. 34-Exh. A, 4–6, 8]. Given the nature of Defendant's denial, premised on the alleged absence of a covered event, this work was necessary to establish the cause and extent of loss.

The parties agreed upon umpire Kevin Mohr by April 21, 2025, and Plaintiff executed the agreement by April 28 [Dkt. 34-Exh.A,7]. The timeline reflects measured, good-faith participation in the process, consistent with the Court's expectations.

### Plaintiff Did Not Violate The Court's June 18 Cease-Work Order

In its response, Defendant contends that Plaintiff disregarded the Court's June 18, 2025 Order [Dkt. 33] by continuing appraisal work. That characterization is inaccurate. The Order directed Plaintiff to "cease any further action on appraisal pending ruling on the potential for dismissal." The clear scope of that instruction was to halt new investigative or collaborative steps.

No new inspections or substantive fieldwork occurred after June 18. Mr. Gadrow finalized his estimate on June 20 based on work already substantially completed [Dkt. 34-Exh. A, 8]. The "Date Entered" field in the Xactimate estimate reflects only the date of document finalization in the software platform, not new appraisal activity [Dkt. 34-Exh.A, 7]. Plaintiff promptly submitted this material as part of his June 25 Show Cause Response, ensuring the Court and opposing counsel had access to all relevant materials [Dkt. 34, Exh. A–B].

This conduct was consistent with the cease-work directive and was undertaken with transparency and respect for the Court's authority.

**Defendant's Improper Coverage Argument Necessitated Additional Work**

The delay and depth of Plaintiff's appraisal analysis were driven not by neglect but by Defendant's own conduct. On May 19, 2025, Defendant's appraiser submitted a position assigning a $0.00 value to the loss [Dkt. 34- Exh. A, 9]. Importantly, this valuation did not rest on a dispute over repair costs or scope of damage. Instead, it was based on coverage exclusions, arguments that fall squarely outside the scope of an appraiser's authority. [Dkt. 34-Exh. A, 10–11].

This unusual position left Plaintiff's appraiser with no alternative but to engage in an extensive and technically demanding response. Mr. Gadrow was required to substantiate both the occurrence of a covered hail event and its resulting damage. This involved in-depth meteorological research using NOAA and radar data, analysis of roof impact patterns, and written rebuttals explaining why coverage defenses do not belong in the appraisal forum. His 15-page appraisal position statement and detailed estimate reflect the level of effort needed to counter a valuation that effectively claimed no covered loss occurred at all [Dkt. 34, Exh. B].

Defendant references a comment by Plaintiff's appraiser on June 3 suggesting delay. However, by that time, Mr. Gadrow had already gathered key photographic and meteorological data and was finalizing his technical report. The statement was not a postponement of inspection but a reference to ongoing work already underway, including document analysis, not dependent on physical re-inspection.

Simply put, the nature of Defendant's $0 appraisal necessitated far more than a routine exchange of estimates, it required Plaintiff's appraiser to build a complete evidentiary foundation

just to enable a meaningful appraisal comparison. The additional time taken was therefore not delay, but the direct result of the heightened complexity imposed by Defendant's approach.

### Plaintiff Has Demonstrated Good Faith and Compliance

The sequence of events reflects consistent effort and progress by Plaintiff to comply with the Court's appraisal order. Between March 18 and 24, Plaintiff replaced his original appraiser. By April 21, the parties reached agreement on the umpire, and all documentation was completed by April 28. Defendant's $0 valuation was received on May 19, and the appraisal report was finalized by June 20. All materials were provided to the Court on June 25 along with Plaintiff's response to the Show Cause Order [Dkt. 34].

The submission included a 15-page technical position statement, a repair estimate totaling $51,211.86, and detailed supporting documentation [Dkt. 34- Exh. B]. These materials fulfill the substantive goal of the appraisal process and reflect Plaintiff's consistent compliance.

### Dismissal Would Prematurely End An Appraisal Near Completion

Both parties have now submitted appraisal positions, and the matter is poised for resolution by the umpire. To dismiss this case at this stage would disrupt the contractual and judicially ordered mechanism for resolving the parties' dispute.

The Court itself acknowledged in the June 18 Order that "completion of appraisal will be ordered later, if determined necessary." [Dkt. 33]. That condition has now materialized: the record includes both sides' valuations, expert reports, and supporting evidence. Furthermore, Plaintiff has provided sufficient documentation to rebut Defendant's denial based on a January 2023 date of loss. The evidence confirms that the hailstorm occurred on June 27, 2022, well within the policy period [Dkt. 34- Exh. A, 4–6; Exh. B].

Allowing the appraisal to proceed will promote judicial economy and facilitate resolution through the contractual process the Court initially ordered.

## Conclusion

Plaintiff has acted diligently and in good faith, responding to unexpected developments and complex technical issues with appropriate care. His conduct satisfies the "best efforts" standard set by the Court. Any delay was the result of appraisal complexity and the scope of Defendant's valuation position, not a failure to comply with Court orders.

Plaintiff respectfully requests that the Court decline to dismiss this matter and permit the appraisal process to proceed to final determination.

Respectfully submitted,

*/s/ Eric Dick*_____

Eric B. Dick
TBN: 24064316
FIN: 1082959
**DICK LAW FIRM, PLLC**
3701 Brookwoods Drive
Houston, Texas 77092
(844) 447-3234 - Office & Facsimile
eric@dicklawfirm.com
www.dicklawfirm.com
**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on this day, July 3, 2025, I caused a true and correct copy of the foregoing pleading to be served on all attorneys of record in compliance with the Federal Rules of Civil Procedure.

*/s/Eric Dick*___
Eric Dick